**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| *v.* | **NO. 23-127-KSM** |
| **SALLIEU MANSARAY** | |

**MEMORANDUM**

Marston, J.                                                                      **July 31, 2024**

Defendant Sallieu Mansaray, who is charged with dealing in firearms without a license and making false statements to a federal firearms licensee, has moved for release pending trial. (Doc. No. 49.)  The Court held a hearing and the parties agreed that the Court should address Defendant's Motion in the context of whether to revoke Defendant's pretrial release conditions.[1] After hearing argument from counsel, the Court found Defendant violated his pretrial release conditions.  The Court revoked Defendant's pretrial release and denied his motion.  This memorandum serves to set forth the Court's reasoning for that ruling.

**I.       Background**

    **A.       Defendant's State Charges**

To fully explain the complex procedural history of this case, the Court must begin with Defendant's criminal charges in state court.  On March 31, 2022, due to incidents that occurred in the fall of 2021 and early 2022,[2] a Protect from Abuse ("PFA") Order was entered against

---

[1] Upon learning Defendant failed to abide by certain pretrial release conditions, the Court issued a bench warrant in June 2023.  The Court was unable to hold a revocation hearing due to Defendant's intervening competency issues, which resulted in Defendant being evaluated and the Court holding a competency hearing in April 2024.

[2] In the fall of 2021, Defendant was arrested twice at Cheyney University.  (April 5, 2023 Pretrial Services Report at 3). The Court understands from the Government's opposition that these incidents involved Defendant's former girlfriend.  (Doc. No. 55 at 8.)  The first arrest was on September 6, 2021

Defendant in relation to his former girlfriend.  (Doc. No. 55 at 7–8; April 5, 2023 Pretrial Services Report at 3.)  Nearly a year later, on February 22, 2023, Defendant violated that PFA Order, and was thereafter arrested and charged in the Delaware County Court of Common Pleas with one count of contempt for violation of an order or agreement.  *See Commonwealth v. Mansaray*, CP-23-MD-0000726-2023 (C.C.P. Del. Cnty).  At his arraignment for these charges, the state court imposed bail conditions and ordered a mental health evaluation.  (Doc. No. 46 at 2.)  Defendant's mental health evaluators concluded that Defendant met the criteria for "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder."  (*Id.*)  Defendant's bail conditions were thereafter modified to include a condition for inpatient mental health treatment.  (*Id.*; Doc. Nos. 8, 12.)  While Defendant awaited transfer to this inpatient mental health facility, he was held at the George W. Hill Correctional Facility.

### B.    Defendant's Federal Charges

On March 28, 2023, while Defendant was in state custody on the charges discussed above, a federal grand jury returned the instant indictment, which charges Defendant with one count of aiding and abetting the dealing of firearms without a license in violation 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), and 2; and seven counts making false statements to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A).  (Doc. No. 1.)  According to the Government, these charges relate to Defendant's purchase of seven firearms between November 2020 and August 2021.  (Doc. No. 55 at 3.)  In connection with each of these purchases, Defendant filled out an Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") Form 4473

---

and resulted in charges of disorderly conduct, harassment, criminal trespass, and simple assault.  (April 5, 2023 Pretrial Services Report at 3.)  The second arrest occurred on November 11, 2021 and similarly involved charges of harassment and criminal trespass.  (*Id.*)  Then, on April 14, 2022, Defendant was arrested by the Upper Darby Township Police Department on charges of simple assault and harassment which, according to the Government, again involved Defendant's former girlfriend.  (*Id.*; Doc. No. 55 at 8.)

under penalty of prosecution.  (*Id.* at 4.)  This form includes a question requiring the purchaser to certify that "he was the actual transferee/buyer" of the firearm at issue.  (*Id.*)  Defendant answered yes to this question for each of these seven firearms.  (*Id.*)

Defendant, however, was not the true purchaser of these seven firearms and instead purchased them on behalf of an associate, who was a convicted felon.  (*Id.* at 3.)  This associate would then sell the firearms to people on the streets, and he and Defendant would split the profits.  (*Id.*)  Between September 2021 and January 2022, through unrelated criminal investigations, the Upper Darby Police Department recovered three firearms registered to Defendant that were purchased and sold through this scheme.  (*Id.* at 3–4.)  Four firearms purchased by Defendant remain unfound and are presumably in the public.  (*Id.*)

On October 28, 2022, Defendant was interviewed by ATF agents regarding his firearm purchases.  (*Id.* at 4.)  During this interview, Defendant admitted to much of the conduct for which he was being investigated: he confirmed that he purchased the firearms and filled out the required paperwork, but no longer possessed them; he acknowledged that he purchased the firearms for his associate, who could not purchase firearms due to a prior conviction, estimating that he did so three or four times; and he admitted that he lied on his firearm purchasing forms and that he should have checked off "no" to the question regarding whether he was the "actual transferee/buyer."  (*Id.* at 4–5.)

### C.    Defendant's Arrest, Federal Arraignment, and Competency Issues

On March 30, 2023, two days after he was federally indicted, Defendant made his initial appearance in connection with his federal charges and was temporarily detained.  (Doc. No. 6.) Defendant was then arraigned on April 7, 2023 before Magistrate Judge Scott W. Reid.  (Doc. No. 11.)  Judge Reid denied the Government's motion for pretrial detention and permitted Defendant to be released on $50,000 unsecured bond with certain conditions, including that

Defendant participate in "mental health treatment/counseling as directed by the Delaware County Courts" in his state criminal matter discussed above, and participate in location monitoring.[3] (Doc. Nos. 11, 12, 13.)  Defendant was thereafter returned to state custody.

In accordance with his local bail conditions, Defendant was transferred to Geo Serenity, the inpatient location designated by the state court, on June 13, 2023.  (Doc. No. 21.)  However, once there, Defendant "refused to comply with program rules."  (*Id.*)  In particular, Defendant "refused [to] complete necessary intake paperwork and group therapy assignments, participate in therapeutic groups, or follow directives."  (*Id.*)  He was also reported to be "disrespectful and verbally abusive towards staff."  (*Id.*)  Just three days after being transferred, on June 16, 2023, Defendant was discharged from Geo Serenity and returned to George W. Hill for failure to meet his bail conditions.  (*Id.*)  Because the failure to comply with his local bail condition of inpatient treatment was also a violation of his federal pretrial release conditions, a federal bench warrant was issued and lodged as detainer on June 16, 2023.[4]  (*Id.*)

The Court scheduled a hearing for July 17, 2023 to discuss this detainer and other pending matters.  (Doc. No. 27; July 17, 2023 Draft Hr'g Tr. at 6:23–8:6.).)  At the hearing, the Court was informed that Defendant would soon reach time served for his state charges and then due to the federal detainer in place would be transferred to the Federal Detention Center in Philadelphia ("FDC Philadelphia").  (July 17, 2023 Draft Hr'g Tr. at 5:21–8:6.)  Pretrial Services requested that the Court hold a bail hearing once this transfer was complete.  (*Id.* at 7:3–20.)  Defense counsel also informed the Court that he would be working to have a mental health

---

[3] On April 28, 2023, Defendant's release order in the Court of Common Pleas of Delaware County was amended to include electronic monitoring as well.  (Doc. No. 20.)

[4] The Court notes that at this time, Defendant was not prescribed medication to treat his mental illness. Defendant was first prescribed ARIPiprazole, his current medication, on October 6, 2023.  (Doc. No. 49 at ¶ 7.)

evaluation completed.  (*Id.* at 10:19–11:9.)  The Court scheduled a follow up hearing to take place on September 7, 2023 to address the revocation of Defendant's pretrial release, among other issues.  (Doc. No. 29.)

In late August 2023, Defendant's state court custody ended and he was transferred to FDC Philadelphia.  (Doc. No. 46 at 4.)  After arriving at FDC Philadelphia, Defendant was observed demonstrating "odd" behavior in his cell, such as throwing items and yelling.  (*Id.*)  Defendant was placed on suicide watch and subsequently placed on Psychological Observation as a step-down procedure until he had demonstrated improved stability.  (*Id.*)  However, Defendant continued to demonstrate odd, aggressive, and delusional behavior.  (*Id.*)

On August 25, 2023 defense counsel attempted to meet with Defendant to obtain a waiver of his right to a speedy trial in support of his motion to continue trial in this case, but was unable to do so.  (Doc. No. 31.)  Then, on September 7, 2023, the date of the Court's previously scheduled hearing, the U.S. Marshals Service reported that Defendant refused to leave his cell to be transported to the courthouse.  (Doc. No. 46 at 5.)  The hearing was rescheduled for September 11, 2023.  (Doc. No. 35 at ¶ 4.)

On September 11, 2023, Defendant was transported to the courthouse by the U.S. Marshals to attend the rescheduled status hearing.  (*Id.* at ¶ 5.)  After meeting with his counsel in the cell room, the Marshals attempted to place him in handcuffs to bring him up to the courtroom.  (*Id.*)  As is well documented, Defendant then became "verbally hostile, physically aggressive," and unwilling to leave his cell.  (*Id.*)  The Court attempted to hold the hearing in the cell room, but once there, Defendant was observed in an "extremely agitated state."  (*Id.*)  After "determining that Defendant was unable to attend the conference without creating a significant disturbance to the proceedings or causing harm to himself or others," the Court held an on the

record conference with counsel only.[5]  Given the pressing concerns regarding Defendant's mental health and competency, the Court requested the attorneys meet and confer regarding a motion for a competency evaluation pursuant to 18 U.S.C. § 4241(b).  (Sep. 11, 2023 Draft Hr'g Tr. at 10:4–7.)  The following day, September 12, 2023, the Government and defense submitted a joint motion for a competency evaluation (Doc. No. 34) which the Court granted (Doc. No. 35).

Defendant was then transferred to Metropolitan Correctional Center Chicago ("MCC Chicago") for a psychological evaluation, arriving on December 22, 2023.  (Doc. No. 46 at 5.)  Once there, Defendant was examined by Forensic Postdoctoral Fellow Doctor Priyanka Rao, and Supervising Forensic Psychologist Doctor Robin Watkins.  (*Id.*)  While at MCC Chicago, Defendant continued to engage in "bizarre and inappropriate" behavior that resulted in his placement in the Special Housing Unit (SHU).  (*Id.* at 6.)  However, his behavior improved once he was released to general population.  (*Id.*)  While at MCC Chicago, Defendant showed a continued interest in his former girlfriend, who was the subject of the PFA order.  (March 20, 2024 Forensic Evaluation at 14.)  For example, the forensic report detailed that in four separate emails, Defendant asked his mother to check in on his former girlfriend. (*Id.*)  Although his mother refused and told Defendant to focus on himself, Defendant continued to ask her to reach out.  (*Id.*)  Dr. Rao and Dr. Watkins ultimately concluded that Defendant was not competent to stand trial, in large part because he was unable to engage "in a focused and relevant discussion regarding his case without periods of interruption and perseveration on his release."  (*Id.* at 24.)

Upon Defendant's return to FDC Philadelphia, the Court held a two-part competency hearing in which both Defendant and Dr. Rao testified.  (Doc. Nos. 40, 44.)  After taking the

---

[5] Without the Defendant being present the Court was unable to address the revocation of Defendant's pretrial release.

issue under advisement, the Court issued a Memorandum on May 20, 2024, concluding that Defendant was in fact competent to stand trial, notwithstanding Dr. Rao's conclusions.  (Doc. No. 46.)

Just three days after the Court issued its opinion regarding Defendant's competency, Defendant filed the instant motion for pretrial release.  (Doc. No. 49.)  On June 10, 2024, the Court held a hearing on this motion, which the parties then agreed should be framed as a request to revoke or modify Defendant's pretrial release conditions, in light of the fact that Defendant's competency issues had prevented the Court from holding a revocation hearing back in September 2023.   (Doc. No. 53; June 10, 2024 Draft Hr'g Tr. at 9:20–10:7.)  At the hearing, the Court found Defendant had violated his pretrial release conditions by failing to participate in the inpatient program at Geo Serenity in June 2023.  The Court denied Defendant's motion and noted the Court would set forth its reasoning in a later filed Memorandum.  (June 10, 2024 Draft Hr'g Tr. at 25:9–27:12.)

After the Court's ruling on Defendant's motion, Defendant indicated that he wanted to enter an open plea of guilty to his charges.  (*Id.* at 27:13–15.)  The Court held a change of plea hearing the next day on June 11, 2024 (Doc. Nos. 60) and scheduled Defendant for sentencing on September 23, 2024 (Doc. No. 61).

## II.    Analysis

This Memorandum outlines the Court's reasoning for revoking Defendant's pretrial release and denying Defendant's motion.  Because intervening mental health concerns prevented the Court from addressing Defendant's violation of his pretrial release conditions back in September 2023, the Court finds that it is appropriate to analyze the present issue under 18

U.S.C. § 3148.[6]  This provision provides that the Court must enter an order revoking release if, after a hearing, the Court:

> (1) finds that there is—
>
>> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>>
>> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>
>> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>>
>> (B) the person is unlikely to abide by any condition or combination of conditions of release.

---

[6] Defendant's motion is framed as a renewed request for pretrial release.  (Doc. No. 49.)  However, as the Government correctly points out in its opposition (Doc. No. 55 at 6 n.3), Defendant's intervening competency concerns prevented the Court from holding a bail hearing to address Defendant's violation of pretrial conditions back in September 2023.  Therefore, the Court must first address whether Defendant's pretrial release should be revoked before turning to Defendant's motion for pretrial release or for a modification of pretrial release conditions.  But the parties agree that because the revocation of Defendant's pretrial release and any attempt to be released or have his conditions of his pretrial release modified are governed by the same factors, the Court should treat these issues together.  (June 10, 2024 Draft Hr'g Tr. at 9:20–10:14); *see also, e.g.*, 18 U.S.C. § 3148(b)(2) (directing the Court to consider the factors in 18 U.S.C. § 3142(g) in determining whether to revoke pretrial release); *United States v. Watson*, No. CR 20-218-27, 2021 WL 6065000, at *3 (W.D. Pa. Dec. 22, 2021) (analyzing a renewed attempt at pretrial release under the factors set for in § 3142(g)); *United States v. Anand*, No. CR 19-518-1, 2020 WL 2556944, at *2 (E.D. Pa. May 20, 2020) (analyzing a motion to modify the conditions of pretrial release through the factors set forth in § 3142(g) and examining whether there was a material change in those factors that "would mitigate the concerns for the community's safety and the realistic risk of flight presented by Defendant's specific circumstances").  In other words, the parties agree that if the Court finds that Defendant's pretrial release should be revoked, it follows that Defendant's motion should be denied.

18 U.S.C. § 3148(b).  Section 3142(g), in turn, provides that in "determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" the Court must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).[7]

---

[7] The Court understands that while the Government must prove by only a preponderance of the evidence that no conditions of release reasonably will assure Defendant's appearance, it must prove by clear and convincing evidence that no conditions of release will reasonably assure the safety of the community.  *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986).  The Court notes, however, that there is some caselaw suggesting that in the context of revoking a defendant's pretrial release, all findings under 18 U.S.C. § 3148(b)(2) need only be established by a preponderance of the evidence.  *See United States v. Richardson*, No. 3:17-CR-24, 2022 WL 2442299, at *5 (W.D. Pa. June 21, 2022); *United States v. Davis*, No. CRIM.A. 09-343, 2012 WL 895918, at *1 (E.D. Pa. Mar. 16, 2012).  Out of an abundance of caution and given the odd procedural circumstances in which we are operating, the Court will apply the higher, clear and convincing evidence standard here.

Here, Defendant does not appear to contest that the first portion of the test—outlined in § 3148(b)(1)—is met, and for good reason. Following Defendant's arraignment, Judge Reid permitted Defendant to be released on $50,000 unsecured bond with certain conditions, including that Defendant participate in "mental health treatment/counseling as directed by the Delaware County Courts" in his state criminal matter, and utilize location monitoring. (Doc. Nos. 11, 12, 13.) However, on June 16, 2023, it was reported that Defendant was removed from Geo Serenity, the inpatient location designated by the state court, just three days after arriving because he refused to comply with program rules and was verbally abusive toward staff. (Doc. No. 21.) It was also reported that he failed to keep his location monitoring device charged. (*Id.*) Based on this report from pretrial services, the Court finds by clear and convincing evidence that Defendant violated multiple conditions of his federal release. *See* 18 U.S.C. § 3148(b)(1)(B).

Turning to the second portion of the test—outlined in § 3148(b)(2)—the Court finds that each of the § 3142(g) factors weigh in favor of revoking Defendant's pretrial release. *See id.* § 3148(b)(2)(A) (requiring consideration of § 3142(g) factors). The first factor requires the Court to consider the nature and circumstances of the offense charged. Here, Defendant is charged with one count of aiding and abetting the dealing of firearms without a license in violation 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), and 2; and seven counts of making false statements to a federal firearms licensee in violation of 18 U.S.C. §§ 924(a)(1)(A). (Doc. No. 1.) These charges arise from Defendant's straw purchasing of seven firearms, three of which have been recovered through criminal investigations and four of which remain out in the public today. (Doc. No. 55 at 3.) Straw purchasing is a serious offense that has a significant impact on public safety. *See United States v. Scott*, 503 F. Supp. 2d 1097, 1102 (E.D. Wis. 2007) ("[S]traw purchases are very serious offenses. They defeat society's attempts to keep firearms out of the

hands of those who should not have them, leading to increased gun violence.").  Indeed, this seriousness is reflected in the fact that in evaluating this factor, Congress directed the Court to specifically consider whether the charged offense involves a firearm.  18 U.S.C. § 3142(g)(1).  Because Defendant faces serious, firearms-related charges, the Court finds that the first factor weighs in favor of detention.

As to the second factor—the weight of the evidence against Defendant—the Court finds that the case against Defendant, as presented in the Government's opposition, is strong.[8]  In particular, the Court notes that Defendant confessed to nearly all of the conduct for which he is charged during an interview with ATF.  (Doc. No. 55 at 4–5.)  Defendant explained to the ATF agent that he purchased firearms from multiple different stores on behalf of his associate who would then sell them, that he no longer possessed those firearms, and that his answer on the ATF Form 4473 was a lie because he was not the ultimate purchaser.  (*Id.*)  Given these key concessions and the fact that Defendant has not pointed to any shortcomings in the Government's case against him, the Court finds that this factor weighs in favor of detention.  *Cf. Richardson*, 2022 WL 2442299, at *7 (finding the second factor weighs in favor of detention because a grand jury had returned an indictment against the defendant and he failed to present evidence "indicating that there are any shortcomings or weaknesses in the Government's evidence against him").

The third factor—the history and characteristics of Defendant—also weighs in favor of detention.  The Court recognizes that some facts that Congress has directed the Court to consider under this factor lean in Defendant's favor.  For example, Defendant has a strong relationship

---

[8] Indeed, prior to the hearing on Defendant's motion, Defendant indicated that he intended to enter an open plea of guilty to his charges.  On June 11, 2024, the day after the hearing, the Court held a change of plea hearing during which Defendant in fact entered a plea of guilty.  (Doc. No. 60.)  Defendant is now scheduled to be sentenced on September 23, 2024.  (Doc. No. 61.)

with his mother and family, who live in the Philadelphia area and attended court hearings in support of Defendant.  (June 10, 2024 Draft Hr'g Tr. at 3:19–22, 10:17–25.)  Nevertheless, the Court finds that this factor favors detention for two reasons.  First, Defendant's behavior when permitted pretrial release is concerning.  Defendant lasted only three days at the inpatient treatment facility that he was required to attend per both his state and federal conditions of release and showed troubling behavior over the course of those three days.  (Doc. No. 21.)  His reluctance to engage in these services appears to have stemmed, at least in part, from his belief that he does not suffer from a mental illness, a belief that has resurfaced numerous times throughout this case.  (Doc. No. 49 at ¶ 9; June 10, 2024 Draft Hr'g Tr. at 11:12–19.)  While defense counsel argues that release is necessary for Defendant to receive treatment, albeit outpatient treatment this time around, the Court is pessimistic about another attempt given Defendant's failure to take mental health services seriously in the past.  *Cf. United States v. Hoover, No. 3:20-CR-07*, 2023 WL 5310661, at *8 (W.D. Pa. Aug. 17, 2023) (finding pretrial release inappropriate where the defendant had previously been discharged numerous times from his drug treatment program); *United States v. Hartnett*, No. CR 22-53-8, 2023 WL 4239601, at *2 (W.D. Pa. June 28, 2023) (finding release inappropriate where the defendant offered "no explanation as to why she will now attend and complete inpatient treatment, despite numerous previous attempts").

Second, the Court finds that Defendant's mental condition weighs against his release.  There is no doubt that Defendant suffers from a serious mental illness which can cause him to be volatile.  Indeed, the Court witnessed the lows of his mental condition firsthand on September 11, 2023 when Defendant became "verbally hostile" and "physically aggressive," and was unable to be safely transported to the courtroom for the scheduled hearing.  (Doc. No. 35 at ¶ 5.)

The Court recognizes that this behavior may have stemmed in part from a lack of medication and incidents that occurred while he was in prison, namely a sexual assault that Defendant reports may have occurred around August 2023.[9]  (Doc. No. 49 at ¶ 2, 3.)  Nevertheless, the troubling nature of Defendant's behavior over the span of this case, including well after the reported sexual assault, raises concerns regarding his release.  (*See* Doc. No. 46 (detailing troubling behavior on the part of Defendant during his evaluation at MCC Chicago including banging his head against the wall and engaging in psychotic ideations).)

Moreover, as detailed in this Court's prior memorandum regarding Defendant's competency to stand trial, the Court understands that medication compliance is critical to Defendant's mental stability and his capacity to meaningfully participate in his defense.  (Doc. No. 46 at 9–11, 19–20; June 10, 2024 Draft Hr'g Tr. at 14:15–15:10 (defense counsel acknowledging the positive and significant impact the medication has on Defendant's focus and behavior).)  While Defendant has been incarcerated at FDC Philadelphia, his medication compliance has been meticulously recorded and available to the Court, defense counsel, and the Government.  (*See* Doc. No. 46 at 10–11, 19–20 (discussing Defendant's medication compliance rate).)  Permitting Defendant's release would remove this ability to track Defendant's medication consumption and deprive the Court of valuable information as to Defendant's current mental condition.[10]  Thus, given Defendant's concerning behavior in the past and that release would

---

[9] The date of this assault is far from clear.  Some records indicate that it occurred in August 2023 (Doc. No. 49-1) whereas others indicate that it occurred in October 2023 (Doc. No. 49-2). (*See* June 10, 2024 Draft Hr'g Tr. at 12:22–13:6 (Defense counsel acknowledging that Defendant cannot identify when the sexual assault occurred).)  If it was the latter date, the assault would not have contributed to Defendant's erratic behavior during on September 11, 2023.

[10] This tracking may have been possible if Defendant was able to be placed in inpatient treatment. Indeed, as the Court explained during the hearing, the Court may have been inclined to grant Defendant's motion if inpatient treatment was a viable option.  (June 10, 2024 Draft Hr'g Tr. at 26:11–18.)  But defense counsel informed the Court that given the current resources available, inpatient treatment is not

prevent the Court from meaningfully tracking whether Defendant is taking the medication that is critical to his competency, this factor weighs in favor of detention.

And the final factor—the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release—favors detention.  In reviewing the totality of the circumstances, *United States v. Santiago-Pagan*, No. 1:08-CR-0424-1, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009), the Court concludes that Defendant presents a danger to particular individuals and to the community at large.  First, the Court is concerned about the safety of Defendant's former girlfriend.  Defendant was previously arrested three times for incidents involving this former girlfriend, resulting in her obtaining a PFA order against him. (Doc. No. 55 at 8.)  Defendant then violated this PFA order and was charged in state court for doing so.  (*Id.* at 8–9.)  Defendant has continued to show an interest in this former girlfriend, repeatedly mentioning her during his psychological evaluation and asking his mother to check up on her.  (March 20, 2024 Forensic Evaluation at 14; June 10, 2024 Draft Hr'g Tr. at 20:24– 21:10).)  Given Defendant's prior criminal history with respect to this former girlfriend and his continued efforts to remain in touch with her, the Court finds that Defendant's release poses a threat to her safety.

Second, given the seriousness of Defendant's offense and his mental state, *see supra* at 10–13, the Court finds that there is clear and convincing evidence that Defendant presents a danger to the community.  There is no doubt that the illegal trafficking of firearms presents a danger to the public at large.  And while Defendant may no longer be able to purchase firearms legally given his charges, his past involvement in the illegal gun market is troubling and suggests

---

an option for Defendant and the only available alternative is house arrest with outpatient treatment.  (June 10, 2024 Draft Hr'g Tr. at 23:24–24:9.)

he may have the requisite connections to become involved again.  The Court thus finds that the fourth factor weighs in favor of detention.

* * *

In sum, the Court finds under § 18 U.S.C. § 3148(b)(1) that Defendant violated his pretrial release conditions.  And the Court finds by clear and convincing evidence under § 3148(b)(2) that "there is no condition or combination of conditions of release that will assure that the person will not . . . pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b)(2)(A).

## III.   Conclusion

For the reasons set forth above, the Court finds that Defendant violated his pretrial release order.  The Court revokes Defendant's pretrial release and denies Defendant's motion for release.  Defendant will remain in the custody pending his sentencing hearing. An appropriate Order follows.